IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br><br>**ZVIRAVIRWA JEHU RUBABA (03),**<br><br>　　　　**Defendant.** | Case No. 19-20012-03-DDC |

## MEMORANDUM AND ORDER

### Background

The United States has moved for an Order issuing a bench warrant for defendant's arrest, claiming he failed to comply with his conditions of release. The motion invokes 18 U.S.C. § 3148. *See* Doc. 74. Defendant has filed two written Responses to the motion, Docs. 76 & 78. And the government has filed a Reply. Doc. 77. Based on the parties' extensive briefing, the court now can decide the question presented without a hearing. For reasons explained by this Order, the court grants the motion and directs the United States to submit a proposed warrant to ksd_crabtree_chambers@ksd.uscourts.gov.

While the filings recite a great many facts, relatively few of them are material to the dispositive issue. Those few material facts are undisputed.

The United States initiated this action in our district in late February 2019 by filing a criminal Complaint (Doc. 1). The defendant was arrested in Dallas, Texas, on February 25, 2019. Two days later, the Grand Jury in Kansas indicted him, charging him with conspiracy to commit wire and mail fraud, wire fraud, aggravated identity theft, theft of government funds, and

access device fraud. *See* Doc. 13. On February 28, the defendant appeared for a detention hearing in the Northern District of Texas. Doc. 23 at 3. United States Magistrate Judge Renee Harris Toliver ordered defendant released on conditions and memorialized those conditions in her Order Setting Conditions of Release. Doc. 24. Among the controlling conditions, the release Order mandated defendant to appear before a judge in the District of Kansas on March 18. *Id.* at 1. The Order also required defendant to surrender his passport to the Clerk of the Texas federal court and restricted his travel. *Id.* at 2. Specifically, defendant's conditions permitted him to travel within the Northern District of Texas and to the District of Kansas for court appearances. Any other travel required approval by the Pretrial Services Officer. *Id.*

The defendant faithfully appeared for pretrial proceedings in Kansas on March 18, 2019. United States Magistrate Judge Teresa J. James adopted the Texas release order, imposing the "same conditions imposed" by the Northern District of Texas. Doc. 29. The case against defendant continued through its discovery and pretrial phases until October 7, 2019, when defendant filed his "Emergency Motion for Temporary Modification of Conditions of Pretrial Release To Permit Defendant To Attend His Grandmother's Funeral in Zimbabwe." Doc. 53. Defendant's motion explained that his paternal grandmother had passed away unexpectedly, that the defendant was particularly close to his grandmother, and thus desired to travel on short notice to her funeral in Zimbabwe. *Id.* The next day, Judge James convened an emergency hearing and granted the emergency motion. Doc. 55. This Order permitted defendant to travel to and from Harare, Zimbabwe for the funeral, traveling outbound on October 8 and 9 and returning to the United States no later than October 25 and 26. Doc. 56. This modification Order also mandated the defendant report to his pretrial services officer in Texas—where defendant continued to live

while on pretrial release—"within 48 hours of his expected return to Dallas on Saturday, October 26, 2019." Doc. 56 at 2.

The defendant did not return to the United States, leading to the current motion. The government reports that the United States Citizenship and Immigration Services (USCIS) rejected defendant's Application to Register as a Permanent Resident or Adjust Status on that service's Form I-485. Doc. 74 at 2. This decision, the government reports, was made on September 25, 2019. *Id.* But, the parties agree, news of this adverse decision did not reach defendant's residence until after he had arrived in Zimbabwe. Both parties explain why USCIS sent the notice informing defendant of its adverse decision on his Application to an address that was, by then, outdated. They also dispute who is to blame for that notice not reaching defendant before he departed for Zimbabwe. The defendant also explains that neither he nor his counsel intended to mislead the court about his status in the United States when he filed his emergency motion. Doc. 76 at 5. But this controversy, among others, is a sideshow. It does not influence the court's analysis and the court thus draws no inference about whose mistakes or misdeeds caused the misdirected notice. Likewise, defendant and his counsel express concern about any possible inference that defendant misled the court about defendant's immigration status when he filed his emergency motion. Neither issue matters to the court's ruling.

## Arguments of the Parties

The government's motion asks the court to issue a warrant under 18 U.S.C. § 3148. Doc. 74 at 3. This provision authorizes the attorney for the government to "initiate a proceeding for revocation of an order of release by filing a motion with the district court." § 3148(b). It also provides judicial officers with authority to "issue a warrant for the arrest of a person charged with violating a condition of release . . . ." *Id.* The rest of this subsection (b) establishes a

procedure and standards that district courts must apply if a defendant is arrested on such a warrant. *See* § 3148(b)(1). The government's motion is straightforward, reciting that defendant hasn't tried to return to the United States and he thus has violated a condition of his release. Doc. 74 at 2–3. So, the government contends, the court should issue its warrant to secure defendant's appearance in the District of Kansas to answer for this alleged violation. *Id.* at 3.

The defendant doesn't respond directly to the government's request to invoke this statute or argue otherwise that the statute doesn't apply in this circumstance. Instead, between his Response (Doc. 76) and his "Response to Government's Reply" (Doc. 78), the defendant makes four arguments arguing that the court shouldn't issue the warrant: (1) the government hasn't initiated a proceeding for revocation of order of release, Doc. 76 at 7; (2) the government created the situation that caused defendant to violate his conditions, *id.* at 8; (3) the government hasn't instituted a "formal proceeding to parole [the defendant] into the United States," *id.*; and (4) the only reason defendant hasn't returned to the United States is because he "chooses not to violate United States immigration laws," as he allegedly would do if he tried to return to the United States, Doc. 78 at 6.[1]

Concluding that the government has made the showing required by 3148(b), the court authorizes the warrant sought by the government. This Order explains why, below.

## Analysis

Under § 3148(b) of Title 18, the government's attorney "may initiate a proceeding for revocation of an order of release" by filing a motion with the district court. The next sentence provides that a "judicial officer may issue a warrant for the arrest of a person charged with

---

[1]  The defendant makes several other arguments, *i.e.*, USCIS gave him "the impression that he was lawfully present in the United States," he traveled to Zimbabwe intending to return to America, he steadfastly had pursued status as an American citizen before the USCIS decision. *See* Doc. 78 at 1–4. The court doesn't address these arguments because they are not pertinent to the court's decision.

violating a condition of release, and the person shall be brought before a judicial officer in the district" where the warrant was issued. *Id.* A court proceeding "in accordance with this section" then follows. *Id.*; *see also* § 3148(b)(1), (2) (specifying standards governing decision whether to revoke release order and order detention). While it is not entirely clear, the defendant's first argument seems to contend that the government's motion doesn't comply with 3148(b)(1), so the court can't issue the warrant. *See* Doc. 76 at 7 ("The government's motion does not seek to 'initiate a proceeding for revocation . . . .'"). Other places, defendant seems to recognize that the court could issue the warrant, but it shouldn't. *See id.* ("The issuance of an arrest warrant under 18 U.S.C. § 3148(b) is discretionary.").

Whether the defendant's argument is that the court can't, or shouldn't issue the warrant, the court finds the argument unpersuasive. The court concludes it properly may issue a warrant for the defendant's arrest even though the government hasn't plainly labeled its motion as one initiating a revocation proceeding. On this point, the court finds a decision by the United States District Court for the Eastern District of Virginia persuasive. *United States v. Roland*, No. 1:05MJ111, 2005 WL 2318866 (E.D. Va. Aug. 31, 2005). In *Roland*, the Virginia court held, "a judicial officer has the inherent authority to initiate a release revocation proceeding to sanction a defendant with a revocation proceeding to sanction a defendant with a revocation of release and an order of detention based on the plain language of Section 3148." 2005 WL 2318866, at *8; *see also United States v. Koerber*, No. 2:17-cr-00037-FB-PMW, 2019 WL 3937024, at *2 (D. Utah Aug. 20, 2019) (holding, "[S]ection 3148(b)[ ] provides two different ways in which a violation can make its way to the district court. 'The attorney for the Government may initiate a proceeding for revocation of an order of release . . . .' Additionally, '[a] judicial officer may

issue a warrant for the arrest of a person charged with violating a condition of release.'" (quoting § 3148(b)).[2]

Finding *Roland* and *Koerber* persuasive, the court concludes that a warrant securing an absent defendant's appearance in court is a preliminary, but essential, step in the statutorily mandated process to determine whether to revoke defendant's release. And, even if the court construed § 3148(b) to require the government to call its motion a request to initiate revocation proceedings, the government's motion satisfies this purported requirement. *See* Doc. 74 at 3 (¶¶ 9–10), asserting that "the defendant has violated the conditions of his release . . . and [a] person who has violated a condition of release is subject to revocation of the release order."

This conclusion leaves defendant's three other attacks on the government's motion. His second argument contends that even if the court has authority to issue a warrant, it shouldn't because the government created the case's current condition. The argument is a clever one but, in the end, the facts don't support it. The government didn't cause the defendant to leave the United States. He chose to ask the court for permission to travel to Zimbabwe for a family funeral. And while the record isn't entirely clear about the government's position on this request, *see* Doc. 55, the facts leave no room to hold the government responsible for his travel outside the country. Perhaps defendant's argument would have some appeal had he tried to return to America and been stymied by immigration officials refusing his reentry. But no one has suggested he has tried to return. Indeed, the government asserts defendant "has not attempted to return to the United States," Doc. 74 at 2 (¶ 7), and defendant never disagrees. This

---

[2] The court is mindful of the decision in *United States v. Herrera*, 29 F. Supp. 2d 756 (N.D. Tex. 1998). In that case, Judge Fitzwater affirmed a magistrate judge's ruling that § 3148(b) does not authorize a pretrial services officer to initiate a proceeding to revoke an order of release. *Id.* at 761. But this case doesn't present the issue *Herrera* decided because, in the words of the statute, the "attorney for the Government" initiated the current proceedings. § 3148(b). And while our court previously has distanced itself from *Herrera*, *see United States v. Blechman*, 782 F. Supp. 2d 1238, 1256 n.6 (D. Kan. 2011), this case doesn't require the court to chose between *Roland* and *Herrera*.

situation isn't comparable to one where the court refused the government's request to issue a bench warrant for an out-of-country defendant. *See United States v. Villa*, No. 18-20062-01-DDC, 2019 WL 1454048 (D. Kan. April 2, 2019).[3]

Defendant's third argument fares no better. It contends the court shouldn't issue the warrant because the government hasn't instituted "any formal proceeding to parole [the defendant] into the United States." Doc. 76 at 8–9. This argument implicitly references 18 U.S.C. § 1182(d)(5)(A). This statute authorizes the Attorney General, "in his discretion [to] parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for . . . significant public benefit any alien applying for admission to the United States . . . ." *Id.* This provision continues, explaining that any entry to the United States under this provision "shall not be regarded as an admission of the alien" and, when the reason for the parole has ended, the applicant's situation will be addressed in the same manner as any other applicant for admission to the country. *Id.* While the briefing on this provision is less than clear, the government doesn't seem to contend that it applies at all because defendant hasn't applied to enter the United States. Instead, it appears that the United States referenced this statute merely to demonstrate that federal law provided the defendant with a pathway to reenter—even as an alien—if he sincerely wished to return to stand trial. But whatever purpose § 1182(d)(5)(A)

---

[3] In *Villa*, the government asked the court to issue Writ of Habeas Corpus Ad Prosequendum requiring the United States Immigration and Customs Enforcement—ICE—to deliver the defendant in a criminal case to federal court for his trial. 2019 WL 1454048, at *2. The court declined to issue the writ, arguably an analogue of the outcome defendant seeks in this case. But this case's facts differ materially. In *Villa*, the grand jury had charged the defendant with illegally reentering the United States. Our court released defendant on conditions pending trial but, when released, ICE took defendant into custody. ICE then deported him to Mexico. About a month later, when defendant didn't appear for his trial, the government asked the court to issue a bench warrant to secure his appearance for trial. The court declined to intervene in a dispute between two executive branch agencies, *i.e.*, the Department of Justice contending defendant should remain in the United States to stand trial and ICE who forcibly had removed defendant from the country. This case doesn't present that problem because the defendant—not the government—decided he would leave the country.

plays in the immigration laws, nothing suggests it is a prerequisite to securing a warrant authorizing arrest of an out-of-country defendant for § 3148(b) proceedings.

Last, defendant argues, he hasn't returned to the United States for just one reason: he "chooses not to violate United States immigration laws" by returning after USCIS instructed him to leave the country. Doc. 78 at 6. The problem with this argument is the facts. The USCIS notice informing defendant that it had denied his Application to Register Permanent Residence or Adjust Status is dated September 25, 2019. Doc. 76-1 at 18. It commanded defendant to depart the United States "within 33 days of the date of this letter." *Id.* Judge James's Order authorizing defendant to travel to Zimbabwe required him to return no later than "October 25-26, 2019." Doc. 56 at 2 (¶ 2). And nothing forbade him from returning to the United States sooner. In short, complying with this court's conditions required defendant to return to the United States before UCSIS's notice required him to leave the country. The court does not accredit defendant's statement that he has refused to return solely because he wanted to comply with this country's immigration laws.

## Conclusion

In sum, the United States has made the showing required by § 3148(b). For the reasons explained by this Order, the court grants the government's motion seeking a bench warrant.

**IT THEREFORE IS ORDERED THAT** the United States' Motion for Bench Warrant (Doc. 74) is sustained.

**IT IS FURTHER ORDERED THAT** the United States must submit a proposed Bench Warrant within 10 days of this Order's date.

**IT IS SO ORDERED.**

**Dated this 29th day of April, 2020, at Kansas City, Kansas.**

                                                   **s/ Daniel D. Crabtree**
                                                   **Daniel D. Crabtree**
                                                   **United States District Judge**